ORIGINAL

FILED
AUG 14 2008
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| TAYLOR CONSULTANTS, INC., Plaintiff, | ) | No. 08-580 C |
| v. | ) | |
| THE UNITED STATES, Defendant. | ) | |

**PLAINTIFF'S COMPLAINT**

Pursuant to the Contract Disputes Act ("CDA"), Plaintiff, Taylor Consultants, Inc. ("Plaintiff" or "Taylor"), through its undersigned counsel, hereby files this complaint against Defendant, alleging as follows:

## I. PARTIES, JURISDICTION, AND STANDING

### A. The Parties

1. Plaintiff Taylor Consultants, Inc. is a Virginia corporation. It maintains an office at 5013 John Ticer Drive, Alexandria, Virginia 22304.

2. On September 18, 2006, the National Guard Bureau awarded Plaintiff Contract Number W9133L-06-C-0037, Guard Family and Youth Training, Issue Management and Assessment Program (the "Contract").

3. The Defendant is the United States of America, acting by and through the National Guard Bureau ("NGB" or "agency").

### B. Jurisdiction

4. This complaint involves claims for the agency's improper constructive and/or

bad faith termination of the Contract, as well as the agency's breach of Plaintiff's fair opportunity to compete. Pursuant to 41 U.S.C. § 605, Plaintiff submitted these claims to the contracting officer for the Contract. The contracting officer subsequently denied Plaintiff's claims. As such, Plaintiff timely brings this action for *de novo* review of the contracting officer's decision before this Court. This Court has jurisdiction over Plaintiff's claims pursuant to 41 U.S.C. § 609(a), as Plaintiff has received the contracting officer's denial of its timely-submitted claims and this action has been commenced within twelve (12) months of said denial.

### C. Plaintiff Has Standing

6. Plaintiff has standing as it has submitted claims for monies owed to the Government in accordance with the Contract Disputes Act and those claims have been denied.

## II. PROCEDURAL HISTORY

### A. Contracting Officer's Decision on Claims

7. On August 10, 2007, the contracting officer for the contract sent Plaintiff a letter indicating that the agency did not intend to exercise the option year on the Contract. That same day, Plaintiff sent an e-mail to the contracting officer protesting the agency's decision as a termination in bad faith. Subsequently, on August 20, 2007, Plaintiff, via undersigned counsel, submitted a letter to the contracting officer re-asserting Plaintiff's August 10, 2007 agency-level protest and submitting a claim for the agency's bad faith termination of the Contract. On September 20, 2007, the contracting officer dismissed Plaintiff's agency –level protest as an improper protest of the decision not to exercise an option.

8. In October, 2007, Plaintiff submitted invoices: (1) for the balance of monies

owed under the Contract in the base year; (2) and for monies owed in connection with work performed at the direction and authorization of the agency in excess of the contract balance. On October 30, 2007, the contracting officer rejected Plaintiff's invoices and requested a meeting with Plaintiff, as well as the COR, to discuss questions she had related to those invoices. That meeting occurred on November 6, 2007. At that meeting, Plaintiff provided the agency with additional information concerning its claims. On January 18, 2008, the contracting officer notified Plaintiff that the decision on its claim was not yet ready and that such was permissible because the claims exceeded $100,000.00. On March 7, 2008, the contracting officer requested additional supporting documentation from Plaintiff to substantiate its claims. Plaintiff provided this additional information on March 18, 2008. The agency has not responded to Plaintiff's March 18, 2008 submission, or responded further concerning Plaintiff's prior submissions, and, as such, the agency is deemed to have denied Plaintiff's claims.

**B. Protests of the Agency's Re-solicitation of the Contract's Requirements**

9. During the Plaintiff's performance of the base year of the Contract, the agency issued a solicitation for the National Child Care Benefit Project. This solicitation, which was issued on July 5, 2007, was for work encompassed in the Contract. Plaintiff discovered this solicitation on August 19, 2007, nine (9) days after receipt of the contracting officer's letter declining to exercise the Contract's option year because the agency "no longer [has] a need for some elements of the work contained" in the Contract, including "regional youth coordinators and a fulltime assessment team." That same day, and for this reason, Plaintiff sent an e-mail to the contracting officer on the Contract inquiring about the solicitation. The solicitation was subsequently cancelled.

10. On June 6, 2008, the agency then posted another solicitation (RFP No. W91331-08-R-CYDP), which consisted almost entirely, if not entirely, of requirements contained within the Contract's statement of work. Plaintiff notified the agency PARC about such, and that solicitation was cancelled on June 9, 2008.

11. On June 26, 2008, the agency then posted RFP No. W9133L-08-R-2016, National Guard Child and Youth Development Program. Once again, this solicitation's statement of work consisted almost entirely, if not entirely, of requirements contained within the Contract's statement of work. The closing date for this solicitation was July 3, 2008. On July 1, 2008, Plaintiff timely protested this solicitation before GAO based on the aforementioned and other grounds. On July 30, 2008, the GAO dismissed Plaintiff's protest as academic because the agency agreed to take corrective action concerning the solicitation. Specifically, the agency stated that it was going to amend the solicitation to "accurately reflect the Government's requirements and the method by which proposals will be evaluated," as well as whether or not it should be an SDVOSB set-aside. In other words, this solicitation was cancelled pending the agency's corrective action.

## IV. FACTS

12. As set forth above, Plaintiff was awarded the Contract on September 18, 2006. The award/effective date of the Contract was September 25, 2006. The Contract's scope of work is as follows: "The Contractor shall provide services to National Guard Family Programs to conduct delivery of Volunteer, Youth, Staff, and Command Team training, also conduct the Issue Management process and conduct assessment of all training developed and delivered in order to develop performance metrics. These metrics will assist the Chief of Family Programs to deliver the

type of training and resources in support of service members and their families in all phases of the deployment cycle support process." The base period of the contract was from September 25, 2006 through September 24, 2007. The Contract also provided for four option years. Option Year 1 was from September 25, 2007 through September 24, 2008. Option Year 2 was from September 25, 2008 through September 24, 2009. Option Year 3 was from September 25, 2009 through September 24, 2010. Option Year 4 was from September 25, 2010 through September 24, 2011.

13. The total award amount for the base period was $3,528,286.96. The total award amount for Option Year 1 would have been the same amount.

14. The contracting officer for the Contract was Lieutenant Colonel Smith and the COR for the Contract was Michael Conner, Sr. Kathy Goedde was Plaintiff's Program Manager on the Contract.

15. During the course of the Contract's base year, the agency, via the COR, refused to allow Plaintiff to accomplish many of the Contract's statement of work requirements. More specifically, the agency refused to allow Plaintiff to, among other things,: (1) oversee the Guard Family Action Plan and Guard Family Team Building; (2) support Deployment Cycle Support training; (3) conduct training classes, conferences, seminars, and symposiums in accordance with Chief, Family Program direction; and (4) prepare computer based training or distance learning modules. Likewise, the agency did not allow Plaintiff to provide assessment support to States and Territories during contingency operations or to serve as the "central point of contact for all issues affecting National Guard children and youth." In fact, there were a great number of statement of work requirements that the agency did not allow Plaintiff to accomplish. This was because the

agency, via and/or at the behest of the COR, sought to remove these requirements from the Contract, even though it was the Contract's base year, and move same to other contract vehicles.

16. This intent to improperly remove requirements from the Contract during the base year is evidenced by the agency's multiple attempts to re-solicit the very same services covered by the Contract, including at least one such attempt during the base year.

17. As set forth above, Michael Conner, Sr. was the COR for the Contract and Kathy Goedde was Plaintiff's Program Manager for the Contract. During performance of the Contract, and at the time of the agency actions in question, Michael Conner and Kathy Goedde had developed a familiar relationship such that would create bias against Plaintiff and/or a conflict of interest against Plaintiff. Due to performance issues with Goedde from the inception of the Contract, Plaintiff fired her in or around March, 2007. It was at this time that the complained-of agency actions, *i.e.*, not allowing Plaintiff to perform a number of the Contract's requirements, began occurring. Additionally, upon information and belief, after Goedde's termination, Conner and Goedde conspired with each other and others to improperly steer work covered by the Contract from Plaintiff to companies associated with Goedde.

18. Despite the foregoing, as late as May, 2007, Conner stated to Plaintiff that the contract and statement of work, as written, were fine and did not require modification. As such, Plaintiff continued performing the portions of the Contract it was allowed to perform. This included planning and holding the agency's National Volunteer Workshop and Youth Symposium ("NVW/YS") in July, 2007, as called for in the Contract.

19. With regard to the agency's NVW/YS, as well as other events under the Contract, Arnold Westphal was the designated event planner, *i.e.*, a subcontractor of Plaintiff. Westphal coordinated with Conner regarding all of the events under the Contract, including the NVW/YS. In fact, all tasking for events was given directly to Westphal by Conner.

20. The events planned for 2007 under the Contract were: (1) Professional Development Conference in January, 2007; (2) NVW/YS in July, 2007; and (3) Site selection for the Professional Development Conference and NVW/YS for years 2008-2012. Additionally, after the start of 2007, the agency added the following events to the Contract: SFPD Quarterly training at the Radisson Crystal City (April, June and September, 2007). At no time did the agency ask for cost estimates for these projects.

21. As early as January 1, 2007, at the agency's Professional Development Conference, Westphal told Conner that the agency's budgeted total amount of $400,000.00 for events would not even cover the NVW/YS. Conner responded that the agency was aware funds would need to be added to the contract for event planning.

22. There were no set budgets for any of the aforementioned events. In fact, while working on the NVW/YS, Westphal asked Conner about the budget for same, Conner advised that the budget was "about $500,000.00," but that the agency would wait until after the event to see what the final costs were.

23. All expenses and costs for the aforementioned events were driven by direction from authorized representatives of the agency. Furthermore, all representations as to amounts

budgeted towards these events and the allocation of funds were provided by and/or ratified by authorized representatives of the agency.

24. At the time of termination of the Contract's base year, Plaintiff had a total of $846,604.86 in unpaid costs and expenses that the agency owed to it. Plaintiff submitted invoices to the agency in connection with its claim for same.

25. One of the submitted invoices was for $616,057.86 and the other was for $230,547.00. The agency approved both of these invoices in full at the November 6, 2007 meeting with Plaintiff. To this end, the agency paid Plaintiff $521,333.76 on November 21, 2007. However, of the approved amount, $325,271.10 remains unpaid.

26. Included in the unpaid amount are costs incurred by Plaintiff in connection with planning events for 2008. All such amounts were incurred prior to the agency's notice to Plaintiff of its intention to terminate the Contract at the end of the base year.

27. One of the events that Plaintiff had begun planning prior to termination was the NVW/YS for 2008. Plaintiff had been planning to host that event in Las Vegas, Nevada and had already gone to significant ends in setting that event up.

28. As set forth above, the Contract's option year was terminated by the agency due to a lack of a requirement. While attempted several times by the agency, no contract was actually put into place after termination of the Contract that would cover the requirements contained in the Contract, including planning and hosting the NVW/YS. Yet, the agency went forward with the NVW/YS for 2008.

29. In addition to simply going forward with the NVW/YS, despite a supposed lack of a requirement and allocated funds, the agency actually used the same site and event plans for this event put together by Plaintiff prior to termination. In other words, the agency told Plaintiff it did not need its services and, despite this representation, used the fruits of Plaintiff's labor improperly. Conner was present at the 2008 NVW/YS and was actually the agency representative responsible for carrying forward with this event for which there was no "requirement."

30. As further evidence of the existence of a continued requirement for the services covered by the Contract, the agency issued an August 24, 2007 memorandum discussing the continued needs of the agency, which needs were covered by the Contract's statement of work.

## V. CAUSES OF ACTION

31. The allegations set forth in Paragraphs 1-30 above are incorporated herein by reference as though set forth in full.

32. Pursuant to the CDA, 41 U.S.C. § 605, Defendant is liable to Plaintiff for the unpaid costs and expenses Plaintiff incurred in the base year of the contract. These expenses and costs were incurred as "Other Direct Costs" under the contract at the behest of and pursuant to the authority of the agency. The agency was certainly aware of and authorized these costs prior to and during the incurrence of same. Furthermore, the agency subsequently approved of these costs. Additionally, the agency's actions, *i.e*, refusing to allow Plaintiff to complete the tasks of the Contract in retaliation for the firing of Goedde, constitute a constructive termination of the Contract in the base year. Consequently, in accordance with applicable procurement law and regulation, Plaintiff is entitled to recovery of the costs and expenses it incurred in the base year, profit on work

done in the base year and the costs incurred in attempting to resolve this dispute.

33. The agency is also liable to Plaintiff for its anticipated profits in Option Year 1. As set forth above, Plaintiff had already engaged in substantial work in preparation for events that were to occur during Option Year 1 of the Contract. Despite the agency's termination of the Contract after the base year for lack of a "requirement," the agency utilized all of Plaintiff's work product after termination of the Contract and carried forward with those events. In addition to this implied admission of the need for the Contract's requirements, the agency's post-termination memorandum explicitly admits such continued need. Given that the agency, up until August 10, 2007, had Plaintiff continue planning those Option Year 1 events, these agency actions resulted in an implied-in-fact contract for Option Year 1. Additionally, these actions, when coupled with the agency's continued attempts to contract with other contractors for the same requirements covered by the Contract, constitute bad faith on the part of the agency. As a result of the foregoing, under applicable procurement law and regulation, the agency is liable to Plaintiff for its anticipated profits in Option Year 1. Alternatively, for these reasons, Plaintiff requests that the Contract be reinstated.

34. The agency's actions also constitute a breach of Plaintiff's fair opportunity to compete. As set forth above, the agency's actions created an implied-in-fact contract for Option Year 1 and the agency clearly had a need for the requirements Plaintiff had been providing under the Contract. Yet, the agency, in bad faith, terminated the Contract at the end of the base year and sought to re-solicit contractors for the exact same work that Plaintiff had been providing. These attempted re-solicitations occurred multiple times without notification to Plaintiff by the agency. Once same happened to be discovered by Plaintiff, each time the agency quickly cancelled the

solicitations. Given this, it is not only clear that the agency terminated Plaintiff in bad faith, but that the agency was actively attempting, without justification, to exclude Plaintiff from being able to compete for these requirements in the future. In other words, the agency is denying Plaintiff its opportunity to fairly compete for and be fairly considered for the requirements at issue. These actions constitute a violation of Section 803 of Public Law 107-107 (implemented by DFARS 208.404-70). For this reason as well, Plaintiff is entitled to the damages it seeks herein.

## VI. REQUEST FOR RELIEF

35. Wherefore, Plaintiff respectfully requests that the Court:

(a) Hold that Plaintiff has prevailed on its causes of action as alleged herein;

(b) Order that Defendant is liable to Plaintiff for the damages sought herein;

(c) Find that Plaintiff is entitled to apply for its attorneys fees in accordance with applicable law, regulation and Court rules; and

(d) Grant such other relief as the Court deems appropriate.

Plaintiff respectfully requests that the Court grant each count of this complaint and in so doing grant the specific relief requested above for each count sustained, and grant such other relief as the Court may deem appropriate.